Filed 9/30/15  Umeokafor v. The Bank of New York Mellon CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| MERCY UMEOKAFOR, | B255429 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC493729) |
| v. | |
| THE BANK OF NEW YORK MELLON, et al. | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Kevin C. Brazile, Judge.  Affirmed.

————————————

Law Offices of Egbase & Associates and Gerald O. Egbase for Plaintiff and Appellant.

Aldridge Pite, Laurel I. Handley and Tim Pomeroy for Defendants and Respondents.

————————————

In this wrongful foreclosure case, plaintiff Mercy Umeokafor appeals from a judgment in favor of defendants Bank of America Home Loans (BofA) and Bank of New York Mellon, fka The Bank of New York, as trustee for the certificate holders of CWABS, Inc., Asset Backed Certificates, Series 2007-SEA2 (BofNY).  Umeokafor challenges the court's order sustaining defendants' demurrer to her causes of action for unfair competition and to set aside the foreclosure sale of her property.  She also contends that the court erred in granting summary judgment as to her fraud cause of action.  We conclude summary judgment of the fraud cause of action was proper and that any error in sustaining the demurrer was harmless.  We therefore affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

Umeokafor filed a first amended complaint alleging causes of action for unfair competition and fraud and to set aside the foreclosure sale of her property.  The causes of action were based on the following alleged facts:  (1) Umeokafor owned certain real property (the property) subject to a deed of trust securing repayment of a loan to defendants; (2) In July 2010, Umeokafor and defendants entered into a temporary loan modification agreement; (3) Under the agreement, Umeokafor was not required to make payments pending the parties' efforts to reach agreement on a permanent loan modification; (4) Defendants represented that they would work with Umeokafor to modify the loan; (5) These representations were false, and defendants secretly intended to foreclose; (6) The defendants' misrepresentations "lulled [her] into a state of complacency" that caused her not "to take legal recourse to protect her interest in her property"; and (7) As a result, the property was sold at a trustee's sale.

Defendants demurred to the first amended complaint.  They supported the demurrer with a request for judicial notice of specified documents, including:
(1) The pertinent deed of trust (the deed of trust); (2) A notice of default recorded on August 22, 2011;  (3) A notice of trustee's sale, recorded on November 23, 2011; and (4) A trustee's deed reflecting a trustee's sale on December 14, 2011, recorded on December 23, 2011.  It does not appear that Umeokafor opposed or objected to the

request for judicial notice, nor does the record indicate whether or how the trial court ruled on the request.

The court sustained the demurrer as to each cause of action and granted leave to amend as to the fraud cause of action only.  Umeokafor thereafter filed a second amended complaint in which she alleged one cause of action for fraud.  Although she expanded upon the facts alleged in the first amended complaint, the essential facts were unchanged.

Defendants filed a motion for summary judgment regarding the fraud cause of action on the ground that Umeokafor could not establish one or more elements of fraud.  They supported the motion with evidence of the following facts.  In October 2006, Umeokafor secured a $487,500, debt with the deed of trust.  The deed of trust provided that "[a]ny forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments . . . in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy."  The beneficiary of the deed of trust was Mortgage Electronic Registration System (MERS); BofA serviced the loan.

Umeokafor defaulted on the loan in July 2010.  On August 16, 2010, BofA sent to Umeokafor a "Notice of Intent to Accelerate."  This notice stated that the "loan is in serious default" and that Umeokafor had to pay $10,613.46 no later than September 15, 2010, to cure the default.  The notice provided information about ways to avoid foreclosure, including the "possib[ility]" of a repayment plan or loan modification. BofA advised Umeokafor, however, that until BofA decided whether "assistance will be extended," it "will pursue all of its rights and remedies under the loan documents and as permitted by law, unless it agrees otherwise in writing."  Finally, BofA informed Umeokafor:  "Failure to bring your loan current or to enter into a written agreement by September 15, 2010, . . . will result in the acceleration of your debt."

Umeokafor requested a loan modification under the federal government's Home Affordable Modification Program (HAMP).  In March 2011, BofA sent a letter to Umeokafor informing her that her "loan is not eligible" for the HAMP because she did

3

not provide BofA with documents it had requested. BofA stated that Umeokafor could appeal the decision within 30 days. It further informed Umeokafor that she "may receive foreclosure/evidence notices" or "see steps being taken to proceed with a foreclosure sale," and that "to protect [her] rights under applicable foreclosure law, [she] may need to respond to these foreclosure notices or take other actions."

Umeokafor appealed the denial of her HAMP request loan modification request. On June 13, 2011, BofA sent to Umeokafor a letter informing her that her "loan is still not eligible" for the HAMP.

Three days later, BofA sent Umeokafor a letter informing her that she "may be eligible for a mortgage modification under the National Homeownership Retention Program," and urged her "to take advantage of this opportunity that may help [her] to avoid foreclosure." (Boldface omitted.) The letter included instructions on how to apply for the program. Umeokafor did not avail herself of this program.

On August 2, 2011, MERS assigned its interest in the deed of trust to BofNY. An agent of BofNY recorded a notice of default on August 22, 2011. The notice of default stated that "a breach of, and default in, the obligation for which [the specified deed of trust] is security has occurred," and that the amount in arrears is $77,302.85. The notice of default further stated that the property "MAY BE SOLD WITHOUT ANY COURT ACTION" and "YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION." The notice of default was mailed to Umeokafor via certified or registered first class mail on August 30, 2011.

The trustee under the deed of trust recorded a notice of trustee's sale on November 23, 2011. On the same day, copies of the notice were mailed to Umeokafor and posted on the property. The notice stated: "YOU ARE IN DEFAULT UNDER A DEED OF TRUST, DATED 10/27/2006. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE." The trustee stated that the sale would take place at a certain time and place on December 14, 2011.

4

BofNY purchased the property at a trustee's sale on December 14, 2011. The trustee's deed was recorded on December 23, 2011.

Umeokafor opposed the motion for summary judgment with her declaration.[1] She stated that on July 27, 2010, she and BofA agreed that Umeokafor had to pay only the minimum monthly interest payment until a final loan modification was reached. BofA accepted such payments until April 2011. In "mid-2011" she attempted to make the minimum payment, but BofA rejected the payment and told Umeokafor to contact the bank's foreclosure department. She did, and was told she had not been accepted for a loan modification because she had not submitted all the required documents. She was told she had "to pay the maximum amount" and would no longer be considered for a loan modification with a principal reduction.

Umeokafor received a letter from BofA dated August 31, 2011, which listed possible options for her to avoid foreclosure. She contacted BofA and again requested a loan modification or repayment plan that included a principal reduction. On September 1, 2011, she received a letter from BofA indicating that the "'workout assistance'" she requested was not an option. She continued to contact employees of BofA, who told her that BofA would review her file and get back to her. However, BofA sent her only "generated correspondence which did not address [her] problem."

Based upon the assurances she received, Umeokafor became "complacent and expected that the defendants would . . . follow through with their representations that they would be offering [her] a loan modification that would include a principal reduction of the existing mortgage loan." She later learned, however, that her property had been sold at a foreclosure sale.

---

[1]   In her opposing separate statement, Umeokafor cited to her declaration to support alleged factual disputes without reference to any page or line of the declaration. This violates rule 3.1350(f) of the Rules of Court, which requires such specificity. Similarly, in her brief on appeal, Umeokafor's only citation to evidence supporting her challenge to the summary judgment order is a single reference to her seven-page declaration without identifying any particular page. (See Cal. Rules of Court, rule 8.204(a)(1)(C) [party must "[s]upport any reference to a matter in the record by a citation to the volume and page number of the record where the matter appears."].)

Umeokafor purported to attach to her declaration correspondence from BofA. No documents, however, were attached to the declaration or otherwise submitted with her opposition.

## SUMMARY JUDGMENT

1. *Standard of Review*

A trial court properly grants summary judgment when there are no triable issues of material fact and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) A moving party defendant is entitled to summary judgment if it establishes a complete defense to the plaintiff's causes of action, or shows that one or more elements of each cause of action cannot be established. (*Aguilar v. Atlantic Richfield Co.*(2001) 25 Cal.4th 826, 849.) The moving party bears the initial burden of production to make a prima facie showing that no triable issue of material fact exists. Once the initial burden of production is met, the burden shifts to the responding party plaintiff to demonstrate the existence of a triable issue of material fact. (*Id.* at pp. 850-851.) From commencement to conclusion, the moving party defendant bears the burden of persuasion to show that no triable issue of material fact exists and that, based on the undisputed facts, the defendant is entitled to judgment as a matter of law. (*Id*. at p. 850.)

On appeal following the grant of summary judgment, we review the record de novo. (*Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1037.) "We liberally construe the evidence in support of the party opposing summary judgment and resolve doubts concerning the evidence in favor of that party." (*Ibid.*)

2. *Discussion*

The sole cause of action asserted in the second amended complaint is fraud. The elements of fraud are: (1) misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity; (3) intent to defraud; (4) justifiable reliance; and (5) resulting damage. (*Lazar v. Superior Court* (1996) 12 Cal.4th 631, 638.) Here, the alleged misrepresentations were, in essence, that defendants would work with Umeokafor to modify her loan permanently when, in fact, they harbored "secret

6

intentions to foreclose." Umeokafor allegedly relied on these misrepresentations, causing her "to become complacent" and "unable to seek the guidance of legal counsel in a timely manner in order to protect her rights and the title to her home prior to the foreclosure."

Defendants met their initial burden of making a prima facie showing of the absence of misrepresentation or Umeokafor's justifiable reliance. In August 2010— two weeks after the alleged temporary loan modification agreement—BofA notified Umeokafor that the loan was "in serious default" and that Umeokafor must pay an amount certain by September 15, 2010, to cure the default and avoid the initiation of foreclosure proceedings. The same notice provided that BofA "will pursue all of its rights and remedies . . . unless it agrees otherwise in writing." Correspondence from BofA to Umeokafor in March and June 2011 informs Umeokafor of loan modification programs. Nothing in these documents, however, suggests that defendants had agreed to modify Umeokafor's loan or to forbear from foreclosing, temporarily or permanently.

Indeed, the March 11, 2011, letter concerning Umeokafor's HAMP request stated: "Important—Do not ignore any foreclosure notices. [¶] You may receive foreclosure/eviction notices . . . or you may see steps being taken to proceed with a foreclosure sale of your home. . . . [T]o protect your rights under applicable foreclosure law, you may need to respond to these foreclosure notices or take other actions. . . . If you do not understand the legal consequences of the foreclosure, you are also encouraged to contact a lawyer or housing counselor for assistance." (Boldface omitted.) Thus, several months before formal foreclosure proceedings began, Umeokafor was cautioned about the need to respond to foreclosure notices and encouraged to seek counsel.

Even assuming defendants harbored a secret intent to foreclose for some period of time, defendants informed Umeokafor of their intent to foreclose no later than August 2011 when the notice of default was recorded and mailed to Umeokafor. With that notice their alleged intent to foreclose was no longer secret and Umeokafor was on notice that she must act to protect her property from foreclosure.

Using statutorily prescribed language, the August notice of default informed Umeokafor that the beneficiary of the deed of trust may foreclose and Umeokafor

7

"MAY LOSE LEGAL RIGHTS" if she did not cure the stated default. (See Civ. Code, § 2924c, subd. (b)(1) [prescribing requirements for text of notice of default].) Umeokafor was further advised that she should "contact a lawyer" if she had any questions about the notice. The intent to foreclose was again expressed in the notice of trustee's sale, which was recorded, mailed, and posted on the property on November 23, 2011. These notices, which were presumably delivered to Umeokafor (see Evid. Code, § 641), provided Umeokafor with longer notice than legally required. (See Civ. Code, §§ 2924, subds. (a)(1), (a)(2) & (a)(3) [three months must elapse between notice of default and notice of sale], 2924f, subd. (b)(4) [notice of sale must be recorded at least 20 days prior to the sale].) Because defendants (or their agents) timely and unambiguously notified Umeokafor of their intent to foreclose in accordance with the statutory requirements, Umeokafor could not have justifiably relied upon any prior representations of postponement or forbearance.

Umeokafor, however, failed to overcome defendants' prima facia showing. She failed to demonstrate the existence of a triable issue of material fact as to either the elements of misrepresentation or justifiable reliance. In an effort to controvert defendant's showing, she presented no documents or evidence other than her own declaration. In her declaration, she described, but did not include, correspondence she received from BofA concerning various options for avoiding foreclosure, including the possibility of modifying or restructuring her loan, and expressed her frustration upon being told that "'the workout assistance [she] requested is not an option.'" She does not, however, deny that she received the documents that supported the defendants' motion, including the notice of default and notice of trustee's sale. At most, Umeokafor's declaration established that she corresponded with BofA about options to avoid foreclosure and spoke to BofA employees who "assured [her] that they were considering a principal reduction of the loan." Such assurance, if it was given, does not establish a triable factual dispute concerning the defendants' intent to foreclose; there is nothing fraudulent about expressing the willingness to negotiate a loan modification while simultaneously planning to foreclose in the event the modification

8

is not achieved. And even if defendants' assurances were false when made, Umeokafor could not justifiably rely upon such false assurances in light of the unambiguous notice of default and notice of trustee's sale. Umeokafor's declaration is thus insufficient to create a triable issue of material fact concerning misrepresentations of defendants' intent or justifiable reliance. Therefore, the trial court did not err in granting summary judgment.

## ORDER SUSTAINING DEMURRER

Umeokafor contends that the trial court erred in sustaining the defendants' demurrer to the first cause of action in her first amended complaint for violation of the unfair competition law and the third cause of action to set aside the trustee's sale. Even if Umeokafor sufficiently pleaded such causes of action, Umeokafor has failed to establish that any error was prejudicial.

As noted above, each of Umeokafor's causes of action was based on the same essential factual allegations: Defendants misrepresented that they intended to work with Umeokafor on a permanent loan modification agreement and suppressed (or concealed) their actual intent to foreclose; and, in reliance on defendants' misrepresentations, Umeokafor was "lulled into a state of complacency" and thereby "denied the right to take legal recourse to protect her interest in her property."

In particular, Umeokafor pleaded that the alleged misrepresentations and suppression of facts constituted the "unlawful, unfair or fraudulent business act or practice" prohibited by the unfair competition law. (See Bus. & Prof. Code, § 17200.) Her allegation that defendants induced her state of complacency, which led to her failure to stop the foreclosure sale, was her attempt to satisfy the unfair competition pleading requirement of "'actual reliance on the allegedly deceptive or misleading statements.'" (*Kwikset Corp. v. Superior Court* (2011) 51 Cal.4th 310, 326-327, quoting *In re Tobacco II Cases* (2009) 46 Cal.4th 298, 306, 326.)

For her third cause of action to set aside the trustee's sale, Umeokafor incorporated all preceding allegations, referred to "defendants' illegal conduct," and asserted that the trustee's sale "should be set aside as a measure to right the wrong committed" against her. Giving the pleading a reasonable interpretation, the "illegal

9

conduct" consisted of defendants' alleged misrepresentations regarding its intent to modify the loan while harboring a secret intent to foreclose.

In support of their demurrer, defendants requested judicial notice of the recorded notices of default and trustee's sale, among other documents. As explained in our discussion of the fraud cause of action in the summary judgment context, Umeokafor's receipt of these documents, with their unambiguous warnings of impending foreclosure, negate the alleged misrepresentations and justifiable reliance essential to each of Umeokafor's causes of action. The problem with defendants' reliance on these notices to support their demurrer is that even if judicial notice of these documents was taken, the recordation of the documents does not establish that the notices were mailed to Umeokafor or that she received them. If the notices were not mailed as required by statute, it is possible that the foreclosure was indeed unlawful and wrongful. (See Civ. Code, § 2924b, subd. (b)(1), (2) [notices of default and sale must be mailed to trustor].) In light of that possibility, the trial court arguably erred by sustaining the demurrer without leave to amend. (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 967 [error to sustain a demurrer when the plaintiff has stated a cause of action under any possible legal theory].)

Any error, however, was harmless. "'[N]o judgment . . . shall be reversed or affected by reason of any error, ruling, instruction, or defect, unless it shall appear from the record that such error, ruling, instruction, or defect *was prejudicial*, and also that by reason of such error, ruling, instruction, or defect, the said party complaining or appealing sustained and suffered substantial injury, *and that a different result would have been probable* if such error, ruling, instruction, or defect had not occurred or existed. There shall be no presumption that error is prejudicial, or that injury was done if error is shown.' (Italics added.)" (*Cassim v. Allstate Ins. Co.* (2004) 33 Cal.4th 780, 802, quoting Code Civ. Proc., § 475; see also Cal. Const., art. VI, § 13 ["No judgment shall be set aside . . . for any error as to any matter of procedure, unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice"].) As the appellant, Umeokafor

10

has the burden of affirmatively showing prejudice. (*Conservatorship of Maria B.* (2013) 218 Cal.App.4th 514, 532-533.)

To determine prejudice, we undertake """"an examination of the entire cause, including the evidence,""" and determine whether "'it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error.'" (*Cassim v. Allstate Ins. Co.*, *supra*, 33 Cal.4th at p. 800.) Here, our record includes evidence of not only the notice of default and notice of trustee's sale, but also the evidence that these notices were mailed to Umeokafor at several addresses, including the property address identified in the deed of trust. Umeokafor's receipt of these notices is presumed (see Evid. Code, § 641), and she has never denied that she received them or otherwise attempted to rebut that presumption. Our record also includes the preforeclosure correspondence from BofA to Umeokafor, discussed above, in which BofA informed Umeokafor that she was in default, that BofA reserved its right to "pursue all of its rights and remedies," and that Umeokafor may need to respond to any foreclosure notices in order to protect her rights. Just as such evidence negated the misrepresentation and justifiable reliance elements of Umeokafor's fraud cause of action, it would have negated the same allegations essential to the causes of action for unfair competition and to set aside the trustee's sale. Thus, even if the demurrers were overruled, it is not reasonably probable that these causes of action would have survived summary judgment or been successful at trial. We will not, therefore, reverse the judgment merely to give temporary life to these unmeritorious claims.

### DEFENDANTS' REQUEST FOR ATTORNEYS' FEES ON APPEAL

Defendants contend that they are entitled to recover their attorneys' fees incurred for this appeal. Although defendants are entitled to their costs on appeal, the question whether they are entitled to recover their attorneys' fees and, if so, the amount of such fees, is a matter for the trial court to determine upon motion after remand. (See *Security Pacific National Bank v. Adamo* (1983) 142 Cal.App.3d 492, 498; *Huntingdon Life Sciences, Inc. v. Stop Huntingdon Animal Cruelty USA, Inc.* (2005) 129 Cal.App.4th 1228, 1267.)

11

## DISPOSITION

The judgment is affirmed.  Defendants are awarded their costs on appeal.

<u>NOT TO BE PUBLISHED</u>.


                                                    ROTHSCHILD, P. J.

We concur:



        JOHNSON, J.



        MOOR, J. *

---

*        Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.